IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EARTH ISLAND INSTITUTE, a California non-profit corporation; SEQUOIA FORESTKEEPER, a California non-profit corporation; HEARTWOOD, an Indiana non-profit corporation; CENTER FOR BIOLOGICAL DIVERSITY, a New Mexico non-profit corporation, and SIERRA CLUB, a California non-profit corporation,

Plaintiffs,

vs.

DEL PENGILLY, in his capacity as District Ranger, Hot Springs Ranger District, Sequoia National Forest; UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture; ANN VENEMAN, in her official capacity as Secretary of Agriculture; DALE BOSWORTH, in his official capacity as Chief of the U.S. Forest Service,

Defendants.

Case No. CIV F-03-6386 JKS

O R D E R

Plaintiffs Earth Island Institute, et al., present a facial challenge to the 2003 regulations promulgated by the United States Forest Service implementing the Forest Service Decision Making and Appeals Reform Act ("ARA"), Pub. L. No. 102-381, Tit. III § 332(a), 106 Stat. 1419 (1992),

codified at 16 U.S.C. § 1612 note.[1] Plaintiffs argue that the regulations violate the ARA by improperly exempting certain Forest Service decisions from appeal, by exempting certain Forest Service decisions that are subject to appeal from the automatic stay provision of the ARA, and by limiting the public comment and appeals process required by the ARA. Docket Nos. 70 (Pls.' opening br.); 72 (Pls.' reply br.). The Forest Service disputes each of these contentions and argues that Plaintiffs lack standing and that this case is not ripe for decision. Docket No. 71 (Defs.' opp'n). The Court has jurisdiction. 28 U.S.C. § 1331.

Plaintiffs initially brought this suit to challenge the Burnt Ridge Project timber sale offered by the Forest Service and to challenge the Forest Service's regulations implementing the ARA. *See* Docket No. 75 (Pretrial order). The Court granted a preliminary injunction preventing the project and several months later approved a settlement regarding the project. *Id.* Thus, the Burnt Ridge timber sale is not at issue in this case. Only the challenges to the administrative appeal rules remain.

**DISCUSSION**

In 1992 the Forest Service sought to overhaul its review and appeal procedures. The Forest Service proposed replacing the administrative appeal process for project decisions with a pre-decision notice and comment period. In response, Congress passed the ARA. The ARA provides:

> In accordance with this section, the Secretary of Agriculture, acting through the Chief of the Forest Service, shall establish a notice and comment process for proposed actions of the Forest Service concerning projects and activities implementing land and resource management plans . . . and shall modify the procedure for appeals of decisions concerning such projects.

*Id.* § (a). The ARA goes on to provide specific requirements for the notice, comment, and appeal process to be developed by the Forest Service. *Id.* § (b)–(e). Plaintiffs challenge the Forest Service's implementation of these specific requirements. However, before confronting the Forest Service regulations, several procedural matters must be addressed. Specifically, the Forest Service questions whether Plaintiffs have standing and whether the issues are ripe for decision. The Court will address these issues first to determine whether inquiry into the merits of the case is appropriate.

---

[1] For the sake of brevity and clarity, further citations to the ARA will include only the specific section number within the ARA, rather than the public law number and code section.

**I. Standing**

The Forest Service argues that Plaintiffs' claims should be dismissed because Plaintiffs lack standing. To satisfy Article III standing requirements a plaintiff must show that:

> (1) it has suffered 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 551, *et seq.*, plaintiffs seeking to establish standing must also demonstrate that the alleged injury is within the "zone of interests" sought to be protected by the statute allegedly violated. *Friends of the Earth v. United States Navy*, 841 F.2d 927, 932 (9th Cir. 1988). The zone of interests test disallows judicial review only where "the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* (quoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987)). "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Laidlaw Envtl. Servs.*, 528 U.S. at 181 (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

In environmental cases, the relevant inquiry is whether a plaintiff has suffered injury, not whether the environment has been injured in fact. *Id.* A plaintiff does not demonstrate injury by alleging that "one of [the organization's] members uses unspecified portions of an immense tract of territory, on some portions of which mining activity has occurred or probably will occur by virtue of the governmental action." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Statements that a plaintiff *would* use an area if not for the opposed action are not the equivalent of "speculative 'some day intentions' to visit endangered species halfway around the world" that the Supreme Court

has held insufficient to establish injury in fact. *Laidlaw Envtl. Servs.*, 528 U.S. at 184 (quoting *Defenders of Wildlife,* 504 U.S. at 564). Where a plaintiff or group of plaintiffs submits affidavits concerning direct effects to the affiant's "recreational, aesthetic, and economic interests," standing is appropriate. *Id*.

The Forest Service asserts that Plaintiffs lack standing because the member on whom standing is based, Jim Bensman of the Plaintiff organization Heartwood, has not made a showing sufficient for standing. Docket No. 71 at 10–11. It argues that Bensman has not shown injury in fact because his affidavit does not state with sufficient particularity his interest in national forests located in California. Further, it argues that any injury to Bensman's use and enjoyment of national forests by development is not "fairly traceable to the challenged action" of the Forest Service. *See Laidlaw Envtl. Servs*, 528 U.S. at 180.

In his declaration, Bensman states that he is a regular visitor to many of the country's national forests, including several located in California. Docket No. 70, Ex. A at ¶¶ 4–9. In addition to using and enjoying national forests, Bensman has "commented on [approximately] a thousand Forest Service projects." *Id*. at ¶ 13. Over the years he has also appealed decisions of the Forest Service and has, at times, been successful. *Id*. at ¶ 12. Since the promulgation of the new regulations, Bensman affies that he has not been able to appeal projects that he and Heartwood otherwise would have appealed. *Id*. at ¶ 14. Further, in August 2003 Bensman and Heartwood submitted comments on a Forest Service proposal. Not knowing whether his comments constituted "substantive comments" under the new regulations, Bensman submitted an addendum to his earlier comments identifying himself as "an interested and affected party for this project." *Id*. at ¶ 18. Later, Bensman and Heartwood filed an appeal of the project. The appeal was dismissed because, according to the Regional Forester, Bensman and Heartwood did not have "standing under the 2003 appeal regulations," and the "comments received during the Notice and Comment period [did] not meet the definition of substantive comments." *Id*. at ¶ 21.

Plaintiff Heartwood has established sufficient injury that is fairly traceable to the actions of the Forest Service in implementing the ARA through the affidavit of Bensman. Bensman has gone beyond speculative or conjectural injury and has demonstrated that he and Heartwood have suffered

actual injury due to the Forest Service's regulations implementing the ARA. Standing in this case is an analytic step away from use and enjoyment of national forests. Any harm to Plaintiffs' use and enjoyment comes from harm to the environment that in turn comes from being unable to effectively challenge Forest Service projects in national forests. The Forest Service's contention that Bensman's affidavit is not concrete and particularized because it does not relate to a specific project in a California national forest is inapposite. This action challenges the regulations adopted by the Forest Service in response to the ARA—not a specific project in a specific national forest—and reference to a specific forest is not needed to ground the contention for purposes of showing injury in fact. That Bensman and his organization have been precluded from appealing Forest Service projects that they would have appealed under the old regulations and that the projects have therefore gone forward and impaired Plaintiffs' use and enjoyment is fairly traceable sufficient injury to clear the standing hurdle. *Cf. City of Davis v. Coleman*, 521 F.2d 661, 671 (9th Cir. 1975) ("The procedural injury implicit in agency failure to prepare an EIS the creation of a risk that serious environmental impacts will be overlooked is itself a sufficient 'injury in fact,' provided this injury is alleged by a plaintiff having a sufficient geographical nexus to the site of the challenged project that he might be expected to suffer whatever environmental consequences the project may have."). A favorable outcome in this case would redress Bensman's injury in that he would have a greater likelihood of stopping Forest Service projects that would impair his use and enjoyment of national forests through access to the administrative appeal process.

That the alleged injury is within the "zone of interests" sought to be protected by the ARA is also clear. *See United States Navy*, 841 F.2d at 932. Congress directed the Forest Service to give the "public adequate notice and an opportunity to comment upon the formulation of standards, criteria, and guidelines applicable to Forest Service programs." 16 U.S.C. § 1612(a). The language of the statute demonstrates that Congress intended that the Forest Service establish procedures facilitating public involvement in Forest Service programs. The injuries alleged by the Plaintiffs—that they have been precluded from meaningful involvement in Forest Service project proposals—fall squarely within the ARA's zone of interest. Through the Heartwood organization member Bensman, Plaintiffs have standing under Article III and the APA to maintain this action.

**II. Ripeness**

The Forest Service argues that the Court should decline to adjudicate Plaintiffs' claims because the claims are not ripe for decision. Docket No. 71 at 8–9. Under the APA "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. "It is the imposition of an obligation or the fixing of a legal relationship that is the indicium of finality of the administrative process." *Getty Oil Co. v. Andrus*, 607 F.2d 253, 256 (9th Cir. 1979); *see also Mt. Adams Veneer Co. v. United States*, 896 F.2d 339, 343 (9th Cir. 1990) (outlining factors to consider in determining finality).

The finality requirement is designed to protect agencies from piecemeal appeals and to ensure that judicial review does not extend to hypothetical disputes. *See Nat'l Wildlife Fed'n v. Goldschmidt*, 677 F.2d 259, 263 (2d Cir. 1982). The finality requirement does not, however, preclude pre-enforcement review of agency regulations. *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–52 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

Here, there can be little doubt that the eight regulations challenged by Plaintiffs are "final" actions by the Forest Service for purposes of the APA. The regulations are the Forest Service's definitive position on how to best implement the ARA and have been enforced on numerous occasions. Further, the impact of the regulations on Plaintiffs are "sufficiently direct and immediate as to render the issue[s] appropriate for judicial review at this stage." *Abbott Labs.*, 387 U.S. at 152. "There is no reason why the Court must wait until a[n] [organization] member loses his right to appeal before considering the validity of these regulations." *Nat'l Treasury Employees Union v. Cornelius*, 617 F. Supp. 365, 367 (D.D.C. 1985) (finding ripe for decision a challenge to the Office of Personnel Management's rules on appeal procedures).

The purpose of the finality requirement would not be served by disallowing a facial challenge in this context. Were the Court to rule that these regulations are not ripe for decision because they are being facially challenged, Plaintiffs could be faced with bringing multiple lawsuits in multiple jurisdictions in order to challenge the regulations as they are applied to specific

projects—and the Forest Service faced with defending against them. This facial challenge promotes judicial economy and is sufficiently particular to avoid judicial foray into the hypothetical. Plaintiffs' challenge to the eight Forest Service regulations implementing the ARA is ripe for decision. The Court will therefore address the merits of Plaintiffs' contentions regarding the challenged Forest Service regulations.

**III. Standard of Review**

Before reaching the merits, however, the Court must determine the appropriate level of deference to accord the Forest Service's determinations. The Supreme Court has instructed courts reviewing an agency's construction of a statute, such as the ARA, to apply a two-prong test. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Under *Chevron* the reviewing court must first examine the statute itself to determine whether Congress has spoken directly to the precise question. *Id.* at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. When, however, an agency's interpretation of a statute is in conflict with the plain language of the statute, reviewing courts should not defer to the agency's interpretation. *Downey v. Crabtree*, 100 F.3d 662, 666 (9th Cir. 1996) (quoting *Nat'l R.R. Passenger Corp. v. Boston & Me. Corp.*, 503 U.S. 407, 417 (1992)).

Second, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. "In determining whether an agency's construction is permissible, the court considers whether Congress has explicitly instructed the agency to flesh out specific provisions of the general legislation, or has impliedly left to the agency the task of developing standards to carry out the general policy of the statute." *Tovar v. United States Postal Serv.*, 3 F.3d 1271, 1276 (9th Cir. 1993).

> If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

*Chevron*, 467 U.S. at 843–44; *see also Ass'n of Pub. Agency Customers, Inc. v. Bonneville Power Admin.*, 126 F.3d 1158, 1169 (9th Cir. 1997) ("When relevant statutes are silent on the salient question, we assume that Congress has implicitly left a void for an agency to fill. We must therefore defer to the agency's construction of its governing statutes, unless that construction is unreasonable.").

Plaintiffs argue that with the exception of two sections in the ARA, the language is plain and that therefore the Forest Service is not due any deference in its construction of the statute. As to the two sections that Plaintiffs concede are ambiguous, they argue that the Forest Service's decisions should not be viewed deferentially because: (1) agency interpretations of statutory provisions providing for review of agency decisions should not receive deference; and (2) the challenged rules are inconsistent with the agency's previous rules and therefore do not deserve deference. The Forest Service counters that Congress enacted the ARA with the intent that the Forest Service "fill in the gaps" and that under these circumstances the agency is due full *Chevron* deference.

Congress directed the Forest Service to develop regulations "establish[ing] procedures, including public hearings where appropriate, to give the Federal, State, and local governments and the public adequate notice and an opportunity to comment upon the formulation of standards, criteria, and guidelines applicable to Forest Service programs." 16 U.S.C. § 1612(a). The delegation of rule-making authority is shown by the Forest Service's "power to engage in adjudication or notice-and-comment rulemaking." *See United States v. Mead Corp.*, 533 U.S. 218, 227 (2001). While the ARA provides some detail regarding the content of the regulations the Forest Service was to develop, it does not flesh out all of the particulars. In such a case, the agency's promulgation of the statute through regulations is entitled to deference, and the reviewing court must determine if the agency's construction of the statute is "permissible." *See Chevron*, 467 U.S. at 843. Thus the Forest Service's regulations must be upheld "unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id*. at 844.

**IV. The Challenged Regulations**

Plaintiffs challenge the validity of eight Forest Service regulations. They argue that: (1) the regulations categorically excluding certain decisions from National Environmental Policy Act

("NEPA") analysis are unlawfully exempted from appeal; (2) the regulation exempting decisions signed by the Secretary and Under Secretary of Agriculture from comment and appeal violates the APA; (3) the ARA does not allow the Forest Service to limit appeal standing to those who have filed "substantive comments;" (4) the "most effective timing" provision for public comment violates the ARA; (5) the ARA does not permit the Forest Service to intentionally refuse to decide an appeal; (6) "emergency situations" may not be defined to include pure economic losses to the government; (7) the ARA does not permit regional foresters to make emergency stay exemption determinations; and (8) the regulations improperly shorten the stay period by five days. The claims are addressed in that order.

**A. Appeal Exclusion for Decisions Exempt From Preparation of an EA or EIS Under NEPA**

Plaintiffs argue that the Forest Service regulations found at 36 C.F.R. §§ 215.4(a) and 215.12(f) violate the ARA by exempting certain projects from appeal. The sections exempt projects for which NEPA does not require the preparation of an environmental assessment ("EA") or environmental impact statement ("EIS"). The Forest Service counters that Congress delegated authority to the Forest Service to determine which projects should and should not be subject to the notice, comment, and appeal process. The Forest Service has reasonably determined, so the argument goes, that projects that are insignificant enough to not require an EA or EIS under NEPA should not be subject to the notice, comment, and appeal process.

The Forest Service is required to subject "projects and activities implementing land resource management plans" to administrative appeal. 16 U.S.C. § 1612(a). Before the ARA was passed the Forest Service made the following subject to appeal:

> [P]rojects and activities for which decision documents are prepared, such as timber sales, road and facility construction, range management and improvements, wildlife and fisheries habitat improvement measures, forest pest management activities, removal of certain minerals or mineral materials, land exchanges and acquisitions, and establishment or expansion of winter sports or other special recreation sites.

36 C.F.R. § 217.3(b) (1992); 54 Fed. Reg. 3342, 3358 (Jan. 23, 1989). Pursuant to this regulation minor actions were approved without being subject to appeal. *See* 36 C.F.R. § 217.3(a)(1) (1992). Certain of these exemptions aligned with projects that would be exempt from an EIS or EA. *See* 57

Fed. Reg. 43180, 43208 (Sept. 18, 1992). However, certain projects that would not require an EIS or EA under NEPA were explicitly included as projects that would require a decision document and therefore be subject to the appeal process. 54 Fed. Reg. at 3358. Included among these were certain timber harvests. *Id.* Subsequently, the Forest Service proposed new rules that would exclude from the notice, comment, and appeal process "any proposed action not subject to environmental analysis and documentation in an Environmental Assessment[.]" 57 Fed. Reg. 10444, 10446 (March 26, 1992). In response to this and other Forest Service proposals, Congress enacted the ARA.

Under the *Chevron* analysis, the question presented is whether the Forest Service's construction of the ARA to permit the categorical exclusion of certain projects is a permissible reading of the statute. *See Chevron*, 467 U.S. at 843. The ARA certainly permits exclusion of environmentally insignificant projects from the appeals process. For example, actions such as maintaining Forest Service buildings or mowing ranger station lawns need not be subject to the notice, comment, and appeal procedures. 57 Fed. Reg. at 43208. Actions that concern "land and resource management plans," however, "shall" be subject to notice, comment and appeal procedures. ARA § (a). To read this plain language as allowing exclusion of timber harvests is to "read[] into the statute a drastic limitation that nowhere appears in the words Congress chose . . . ." *See Hercules, Inc. v. EPA*, 938 F.2d 276, 280 (D.C. Cir. 1991) (addressing the EPA's implementation of notice and covenant requirements imposed by CERCLA). By the Forest Service's own definition, "land and resource management plan[s]" are expected to contain "[b]road, programmatic direction for a forest, grassland, or prairie[]" including "identification of lands at the broad-scale . . . suitable for timber harvest." 67 Fed. Reg. 72,770, 72,773 (Dec. 6, 2002). Furthermore, the ARA was drafted in direct response to the Forest Service's 1992 proposal to eliminate such appeals. While the Forest Service is clearly not required to make every minor project it undertakes subject to the appeals process, it is required to delineate between major and minor projects in a way that gives permissible effect to the language of the ARA. The Forest Service rules codified at 36 C.F.R. §§ 215.4(a) and 215.12(f) are "manifestly contrary" to the ARA. *See Chevron*, 467 U.S. at 843.

**B. Exemption From Appeal of Decisions Signed by the Secretary or Under Secretary of Agriculture**

The Forest Service appeals rules provide that project decisions that are signed directly by the Secretary or Undersecretary of Agriculture constitute the final administrative determination by the Forest Service and are therefore not subject to the notice, comment, and appeal process. 36 C.F.R. § 215.20. The Forest Service argues that this is not contraindicated by the ARA because the ARA requires an appeals process for "proposed actions of the *Forest Service*," not for actions of the Secretary of Agriculture. *See* ARA § (a).

In *Wilderness Society v. Rey*, 180 F. Supp. 2d 1141 (D. Mont. 2002), a federal court squarely addressed this argument. *Id*. at 1147–48. The *Rey* court labeled the argument a "strained premise" based on the proposition that the Secretary and Undersecretary are not "employee[s] of the Forest Service." *Id*. at 1147. The court continued,

> [b]y its plain language, the [ARA] requires the Secretary to implement an appeal process for decisions of the Forest Service on proposed actions of the Forest Service concerning projects and activities implementing land and resource management plans. Title 7 C.F.R. 2.12 allows the Secretary to exercise authority she has previously delegated, but it does not eliminate the statutory right to an appeal of a Forest Service decision codified in the [ARA]. The Secretary is required by statute to have an administrative appeal process; the regulation does not alleviate her statutory duty. Simply having the Undersecretary or Secretary sign a record of decision of the Forest Service does not diminish the fact that the record of decision is a decision of the Forest Service. To hold otherwise defies common sense.

*Id*. at 1148.

The Forest Service, like most government agencies, faces constant pressure to pare down administrative costs. The Court is sensitive to the challenges presented by such an endeavor. The Forest Service cannot, however, attempt to streamline its appeals process by creating an escape hatch that thwarts congressional intent. As the *Rey* court stated, "[t]he notion that a signature by the Undersecretary transforms the action from Forest Service business to the business of some other agency is mystical legal prestidigitation. The decision, not the signatory, is the operative fact for purposes of the [ARA]." *Id*. The Forest Service's reading of Congress's directive to provide an appeal process for decisions of the Forest Service as not including decisions signed directly by the Secretary or Undersecretary of Agriculture is not a permissible interpretation. *See Chevron*, 467 U.S. at 843.

**C. Persons who may File an Appeal**

The ARA preserves the right of appeal to "a person who was involved in the public comment process under subsection (b) through submission of written or oral comments or by otherwise notifying the Forest Service of their interest in the proposed action." ARA § (c). The Forest Service implemented this provision of the ARA with the following regulation: "Individuals and organizations wishing to be eligible to appeal must provide . . . [s]pecific substantive comments . . . on the proposed action, along with supporting reasons that the Responsible Official should consider in reaching a decision." 36 C.F.R. § 215.6(a)(3). Plaintiffs argue that this language violates the ARA in two ways. First, they contend that the Forest Service impermissibly added the requirement that comments be "substantive," rather than merely sufficient to have "notif[ied] the Forest Service of their interest in the proposed action." Second, Plaintiffs argue that the way the Forest Service has formulated the relevant time period for submission of "substantive" comments may run before any environmental assessment is available to the public. Thus, Plaintiffs argue, a person may not become aware that they are an interested party until after the period for submission of substantive comments has passed. The Court will first address the time period for submission of comments before turning to the "substantive requirement."

1. Timing of Legal Notice of Comment Period

General notice of proposed rule making by agencies must include: "(1) a statement of the time, place, and nature of public rule making proceedings; (2) reference to the legal authority under which the rule is proposed; and (3) either the terms of substance of the proposed rule or a description of the subjects and issues involved." 5 U.S.C. § 553(b). The APA does not mandate a minimum comment period nor does it specify when notice is optimally given. *See Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1484 (9th Cir. 1992).

The Forest Service regulations implementing the ARA provide that the Responsible Official shall "[d]etermine the most effective timing for publishing the legal notice of the proposed action and opportunity to comment." 36 C.F.R § 215.5(a)(2). It is not feasible for the Forest Service to publish legal notice indefinitely or even for protracted periods of time. The timing provision is not

an attempt to end-run the notice and comment requirements of the ARA and is a permissible reading of Congress's directive.

2. The "Substantive" Requirement

The Supreme Court has long recognized that agencies may impose a substantive threshold on those seeking to participate in proposed agency actions. *See Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 553–54 (1978). Administrative proceedings are not designed to be "a game or a forum to engage in unjustified obstructionism by making cryptic and obscure reference to matters that 'ought to be' considered." *Id*. Agencies have discretion to screen out "unjustified obstructionism" by requiring expressions of interest to be "sufficient to require reasonable minds to inquire further." *Id*. at 554.

The Forest Service defines "substantive comments" as "[c]omments that are within the scope of the proposed action, are specific to the proposed action, have a direct relationship to the proposed action and include supporting reasons for the Responsible Official to consider." 36 C.F.R. § 215.2. The Forest Service has explained that the "substantive" requirement is intended to both streamline the notice and comment process and focus the attention of the Forest Service on helpful, pertinent comments.

> Experience has shown that when comments are received that are not within the scope of the proposed action or are not specific to the proposed action, or do not include supporting reasons for concerns, they are not useful for consideration in project planning. The intent in requiring substantive comments is to obtain meaningful and useful information from individuals about their concerns and issues, and use it to enhance project analysis and project planning.

68 Fed. Reg. 33,582, 33,587 (June 4, 2003). The Forest Service's attempt to avoid wasting resources on "cryptic and obscure" matters and to focus instead on "meaningful and useful" comments is within the Agency's discretion and does not violate the precepts of the ARA. *See Vt. Yankee Nuclear Power*, 435 U.S. at 553–54; 68 Fed. Reg. at 33,587. As this is a facial challenge, the exact parameters of what "substantive" means are not clear. Whether the Forest Service has imposed an unduly heavy burden on would be participants with the "substantive" requirement will have to be fleshed out in as-applied challenges. In the facial challenge context, the "substantive" requirement is a permissible reading of the ARA.

**D. Affirmance Without Decision**

Plaintiffs argue that the Forest Service has stripped the right of appeal out of the ARA by enacting 36 C.F.R. § 215.18(b). Docket No. 70 at 17. Under that provision, the Appeal Deciding Officer will either:

> (1) Issue a written appeal decision within 45 days following the end of the appeal-filing period, which affirms or reverses the Responsible Official's decision, either in whole or in part, and which may include instructions for further action. . . . The Appeal Deciding Officer shall send a copy of the appeal decision to the appellant(s), the Appeal Reviewing Officer, and the Responsible Official within 5 days; or
> (2) Not issue an appeal decision and so notify the appellant(s) in writing that an appeal decision will not be issued and that the Responsible Official's decision constitutes the final agency action of the Department of Agriculture (§ 215.15(e)(2)). Notification shall be sent no sooner than 46 days nor later than 50 days following the end of the appeal-filing period.

36 C.F.R. § 215.18(b). The regulation further states that the "appeal disposition constitutes the final administrative determination of the Department of Agriculture." 36 C.F.R. § 215.18(c).

The ARA provides some detail on how appeals are to be dispatched. If an appeal is not disposed of through meetings with the appellant, an appeals review officer "review[s] the appeal and recommend[s] in writing, to the official responsible for deciding the appeal, the appropriate disposition of the appeal." ARA § (d)(2). The official responsible for deciding the appeal then makes the decision. *Id*. However, if the decision is not made within forty-five days, the ARA requires that "the decision on which the appeal is based . . . be deemed to be a final agency action for the purposes of [the APA]." *Id*. § (d)(4). Final agency action is, of course, judicially reviewable. *See* 5 U.S.C. § 704.

Plaintiffs argue that "not issu[ing] an appeal decision" essentially eviscerates the ARA by eliminating administrative appeals. Docket No. 70 at 17. The Court is not convinced. In this instance the Forest Service's implementing regulation is little more than a paraphrase of the relevant provisions of the ARA. Both provide that when an appeal decision is not timely it constitutes a summary affirmance of the decision made by the responsible official. *Compare* ARA § (d)(4) ("[T]he decision on which the appeal is based shall be deemed to be a final agency action . . ."), *with* 36 C.F.R. § 215.18(b)(2) ("[T]he Responsible Official's decision constitutes the final agency action of the Department of Agriculture."). When such affirmance occurs, appellants may pursue the

matter in federal court. The implementing regulation is virtually identical to the language of the ARA and is therefore a "permissible" reading of the statue. *See Chevron*, 467 U.S. at 843.

**E. Emergency Stay Provisions**

Plaintiffs' next set of arguments relate to the Forest Service regulations implementing the automatic stay provision of the ARA. *See* Docket No. 70 at 18–22. The provision states:

> (e) Stay.—Unless the Chief of the Forest Service determines that an emergency situation exists with respect to a decision of the Forest Service, implementation of the decision shall be stayed during the period beginning on the date of the decision—
> (1) for 45 days, if an appeal is not filed, or
> (2) for an additional 15 days after the date of the disposition of an appeal under this section, if the agency action is deemed final under subsection (d)(4).

ARA § (e). Plaintiffs argue that the Forest Service has impermissibly restricted this provision by: (1) defining "emergency situation" to include situations involving potential economic loss; (2) allowing regional foresters, rather than exclusively the Chief of the Forest Service, to declare an emergency situation exemption from the stay provision; and (3) shortening the stay period by five days. *See* Docket No. 70 at 18–22. The arguments are addressed in order.

<u>1. Emergency Situations and Economic Loss</u>

The Forest Service defines "emergency situation" as

> A situation on National Forest System (NFS) lands for which immediate implementation of all or part of a decision is necessary for relief from hazards threatening human health and safety or natural resources on those NFS or adjacent lands; or that would result in substantial loss of economic value to the Federal Government if implementation of the decision were delayed.

36 C.F.R. 215.2. Plaintiffs argue that the inclusion of "substantial loss of economic value" in the definition of "emergency situation" is an attempt by the Forest Service to avoid the appeal process when it comes to salvage timber sales. The Forest Service responds that because "emergency situation" is not defined in the ARA, the Forest Service's definition must be upheld under *Chevron* because it is not "manifestly contrary to the statute" and that the provision was designed to avoid having to remove fire-damaged timber at taxpayer expense. *See* Docket No. 71 at 26–29.

The definition of an "emergency" is "an unforseen combination of circumstances or the resulting state that calls for immediate action," or "an urgent need for assistance or relief." Merriam-Webster Online *available at* http://www.m-w.com. The position of the Forest Service that

"substantial loss of economic value" "calls for immediate action" is not an impermissible reading of the ARA. *See Chevron*, 467 U.S. at 843.

2. Who May Declare an Emergency Situation

Plaintiffs' next argument relating to the emergency stay provisions of the ARA is that the Forest Service permits subordinates of the Chief of the Forest Service to declare emergency situations in contravention of the ARA. The Forest Service regulation reads in relevant part: "The Chief and the Associate Chief of the Forest Service are authorized to make the determination that an emergency situation (§ 215.2) exists, and they may delegate this authority only to the Deputy Chief for National Forest System and to the Regional Foresters." 36 C.F.R. § 215.10(a). This regulation expands the ARA's grant of authority from permitting "the Chief of the Forest Service [to] determine[] that an emergency situation exists." *See* ARA § (e).

Delegation of duties is often permitted in statutes. Where Congress does not specifically permit delegation or subdelegation, the purpose of the statute must be examined to determine if it is proper. *Assiniboine & Sioux Tribes v. Bd of Oil & Gas Conservation*, 792 F.2d 782, 795 (9th Cir. 1986); *see also Inland Empire Public Lands Council v. Glickman*, 88 F.3d 697, 702 (9th Cir. 1996) (holding that the Secretary did not have to personally authorize every salvage timber sale pursuant to 16 U.S.C. § 1611 where the statute did not explicitly prohibit subdelegation). However, where a statute specifies delegation in one section but does not specify it in another, delegation authority cannot be imputed to the entire statute. *See Cudahy Packing Co. v. Holland*, 315 U.S. 357, 364 (1942) ("[I]t seems to us fairly inferable that the grant of authority to delegate the power of inspection and the omission of authority to delegate the subpoena power shows a legislative intention to withhold the latter."); *see also United States v. Mango*, 199 F.3d 85, 91 (2d Cir. 1999) ("[S]pecific authority to subdelegate one power within a given piece of legislation may indicate that Congress did not intend to allow subdelegation of other powers . . . .").

In certain parts of the ARA Congress specifically permitted delegation. For example, an attempt at informal disposition of appeal is to be made by "a designated employee of the Forest Service," ARA § (d)(1)(A), and formal review of appeals is to be conducted by a "appeals review officer designated by the Chief of the Forest Service," *id.* § (d)(2). Furthermore, unlike *Inland*

*Empire Public Lands Council*, the purpose of the ARA is not merely to "expedite [timber] sales." *See* 88 F.3d at 702. On the contrary, the ARA serves to guide the Forest Service in establishing procedures that facilitate public involvement in the "formulation of standards, criteria, and guidelines applicable to Forest Service programs." 16 U.S.C. § 1612(a). Given the specific authority to delegate certain duties in the ARA, the conspicuous absence of delegation elsewhere in the statute, and the purpose of the ARA as a whole, the Forest Service's regulation allowing delegation of the determination that an emergency situation exists is impermissible. *See Chevron*, 467 U.S. at 843.

3. Shortening the Stay Period

Plaintiffs next argue that the Forest Service's rules implementing the emergency stay provisions of the ARA impermissibly shorten the fifteen-day stay period by five days. Docket No. 70 at 22. The ARA requires that when an appeal is filed with respect to a decision of the Forest Service, the implementation of the decision will be stayed "for an additional 15 days after the date of the disposition of an appeal[.]" ARA § (e)(2). The Forest Service's rule states that "[t]he Appeal Deciding Officer shall send a copy of the appeal decision to the appellant(s), the Appeal Reviewing Officer, and the Responsible Official within five days[.]" 36 C.F.R. § 215.18(b)(1). Plaintiffs argue that waiting to send a copy of the decision for five days deprives appellants of one-third of the time they would otherwise have to take action to stop implementation of the decision. They further assert that the regulation was not subject to notice and comment and is not a "logical outgrowth" of any proposed rule. Docket No. 70 at 22. Because it is dispositive, the Court first addresses the procedural issue of whether or not the final regulation was a "logical outgrowth" of the proposed regulation.

Plaintiffs argue that the regulation should be invalidated on the procedural ground that the Forest Service did not submit the rule for notice and comment and that it is not the "logical outgrowth" of the proposed rule. *See Rybacheck v. EPA*, 904 F.2d 1276, 1287–88 (9th Cir. 1990); *Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 547 (D.C. Cir. 1983). Before promulgating rules, an agency must provide notice sufficient to "fairly apprise interested persons of the 'subjects and issues' before the Agency." *Natural Resources Defense Council, Inc. v. EPA*, 863

F.2d 1420, 1429 (9th Cir. 1988) ("*NRDC I*") (quoting *Natural Resources Defense Council, Inc. v. EPA,* 822 F.2d 104, 121 (D.C. Cir. 1987) ("*NRDC II*")); *see also* 5 U.S.C. § 553(b). This statutory requirement ensures public involvement in administrative rule making and "minimize[s] the dangers of arbitrariness and inadequate information." *NRDC II,* 822 F.2d at 121.

Agencies do, however, have authority to promulgate rules that differ from the proposed rule on which the public was invited to comment. *See NRDC I*, 863 F.2d at 1429. A final rule that departs from a proposed rule must be a "logical outgrowth" of the proposed rule. *Id*. (citing *Small Refiner Lead*, 705 F.2d at 547). "The essential inquiry focuses on whether interested parties reasonably could have anticipated the final rulemaking from the draft[.]" *Id*. Furthermore, an agency "must *itself* provide notice of a regulatory proposal. Having failed to do so, it cannot bootstrap notice from a comment. The APA does not require comments to be entered on a public docket. Thus, notice necessarily must come—if at all—from the agency." *Small Refiner Lead*, 705 F.2d at 549.

The Forest Service's proposed rule apparently did not include any reference to the five-day mailing period, or any other period of time in which appellants would receive notice that a decision had been rendered.[2] The proposal did, however, draw comments regarding "when notification of an appeal decision occurs." 68 Fed. Reg. at 33,592. Presumably in response to the comment(s) expressing concern about when within the fifteen-day stay notice would occur, the Forest Service promulgated the five-day mailing rule. The Forest Service explained:

> Paragraph (b)(2) was added to ensure that appellants would be notified of the final agency action. . . . To alleviate concerns about the timing between when an appeal decision is mailed to the appellant(s) and when implementation of the project begins, the final rule clarifies that an appeal decision (paragraph (b)(1)) must be sent within 5 days of its being rendered.

*Id*. The aim of the regulation is to avoid a situation where the appeal decision is not sent out, for example, for fourteen days, thereby effectively depriving an appellant of the opportunity to take further action within the stay period while not technically violating the statute. The regulation was

---

[2]Neither Plaintiffs nor the Forest Service cite or quote the proposed rule. However, there is not an issue of fact as to whether the proposal included an analogue to the five-day rule. Both parties agree that it did not. *See* Docket Nos. 70 at 22; 71 at 32–33; 72 at 22–24.

apparently enacted with good intentions. However, due to the notice and comment requirements of the APA, the road to implementation of agency decisions is not paved with good intentions. The fact remains that the proposed regulation did not address the issue of when an appeal decision would be sent to appellants. Without any such mention in the proposal, interested parties could not reasonably anticipate the final rulemaking from the draft. *See NRDC I*, 863 F.2d at 1429. The Forest Service cannot "bootstrap" notice from the concerns expressed in insightful comments. *See Small Refiner Lead*, 705 F.2d at 549. While the Forest Service certainly has discretion to enact rules that differ from proposed rules, where, as here, the proposal makes no mention of an important component of the final rule enacted, the final rule is not the "logical outgrowth" of the proposal. *See Rybacheck,* 904 F.2d at 1287–88; *Small Refiner Lead,* 705 F.2d at 547.

**V. Remedy and Conclusion**

Plaintiffs argue that the appropriate remedy in this case is to set aside the rules promulgated in 2003 in their entirety and to reinstate the rules previously in effect. Docket No. 73 at 25. The Forest Service counters that regulations found impermissible should be severed and the remaining regulations remain in effect. Docket No. 71 at 35. When some, but not all, portions of a regulation are deemed invalid the appropriate remedy may be to severe the invalid regulations. Severance is appropriate when (1) it will not impair the functioning of the rules as a whole, and (2) "there is no indication that the regulation would not have been passed but for [the severed portion's] inclusion." *K-Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988).

While the provisions determined to be impermissible in this Order are important components of the rules, their absence would not necessarily impair the functioning of the rules as a whole. Furthermore, there is no indication in the record that the Forest Service would not have promulgated the rules but for the invalidated portions. The impermissible regulations will therefore be severed, and the permissible regulations remain in place.

**IT IS THEREFORE ORDERED:**

The following regulations are invalid as stated in this Order and will be severed from the Forest Service regulations: 36 C.F.R. § 215.4(a) (excluding from notice and comment procedures projects and activities that are categorically excluded from documentation in an EIS or EA); 36 C.F.R. § 215.12(f) (excluding from appeal procedures decisions that have been excluded from documentation in an EIS or EA); 36 C.F.R. § 215.20(b) (exempting from notice, comment, and appeal procedures decisions signed directly by the Secretary); 36 C.F.R. § 215.10(a) (permitting delegation of the determination that an emergency situation exists); and 36 C.F.R. § 215.18(b)(1) (providing that an appeal decision will be sent to appellants five days after the decision is rendered).

Dated at Anchorage, Alaska, this 2nd day of July 2005.

/s/James K. Singleton, Jr.
**JAMES K. SINGLETON, JR.**
United States District Judge