IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARTH ISLAND INSTITUTE, a California non-profit corporation; SEQUOIA FORESTKEEPER, a California non-profit corporation; HEARTWOOD, an Indiana non-profit corporation; CENTER FOR BIOLOGICAL DIVERSITY, a New Mexico non-profit corporation, and SIERRA CLUB, a California non-profit corporation,<br><br>     Plaintiffs,<br><br> vs.<br><br>NANCY RUTHENBECK, in her capacity as District Ranger, Hot Springs Ranger District, Sequoia National Forest; UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture; ANN VENEMAN, in her official capacity as Secretary of Agriculture; DALE BOSWORTH, in his official capacity as Chief of the U.S. Forest Service,<br><br>     Defendants. | Case No. CIV F-03-6386 JKS<br><br>O R D E R |

   Two motions are presently before the Court. The first is Defendants' motion to clarify and amend judgment. Docket No. 79. The second is Plaintiffs' motion to hold the Forest Service in contempt. Docket Nos. 81 (Mot.); 86 (Opp'n); 88 (Reply). The motions will be addressed in turn.

1

**DISCUSSION**

Order and judgment were entered in this case on July 7, 2005, upholding in part and striking in part the Forest Service's regulations governing notice, comment and appeal of agency decisions. Docket Nos. 77 ("July Order"); 78.  The parameters of the regulations and the reasons for upholding or striking them are set out at length in the July Order and do not bear repeating here.  The current dispute concerns the reach of the July Order, both geographically and temporally.

**I.     Defendants' Motion to Clarify and Amend Judgment**

Defendants urge the Court to clarify the July Order in two regards.  First, they seek a geographic limitation of the scope of the July Order to the Eastern District of California.  Second, Defendants move for clarification that the July Order applies prospectively only.

Defendants move under Federal Rule of Civil Procedure 60(b)(6).  The rule permits relief from a final judgment or order for "any reason justifying relief."  This provision is "used sparingly as an equitable remedy to prevent manifest injustice."  *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993).  Under Federal Rule of Civil Procedure 59(e), a motion to alter or amend a judgment must be filed no later than ten days after entry of the judgment.  Relief beyond the ten-day window is sometimes available under Rule 60(b)(6), but only where extraordinary circumstances prevented a litigant from seeking earlier relief.  *Id*.

Here it appears that the Forest Service became aware of the divergence between its understanding of the operation of the July Order and Plaintiffs' understanding after receiving a letter from Plaintiffs dated July 22, 2005.  Because the Forest Service was apparently unaware of the lingering issues regarding the functioning and application of the July Order until receiving the letter several days after the ten day deadline passed, the 60(b)(6) motion appears to be the appropriate mechanism for clarification or amendment.  The substantive issues presented by the 60(b)(6) motion are therefore addressed below.

**A.     Geographic Scope**

The gravamen of Defendants' argument for limiting the scope of the July Order to the Eastern District of California is that the Government has an interest in obtaining multiple judicial interpretations of the issues resolved by the July Order.  They argue that because of this interest, the

Forest Service should be allowed to continue to enforce the regulations invalidated by the July Order in other districts within the Ninth Circuit, and in other circuits.

Agencies are sometimes allowed to confine a ruling of one court to that circuit and proceed with their conflicting interpretation of the law elsewhere. A federal agency is not, however, necessarily entitled to limit a ruling to the deciding court's immediate jurisdiction. In *Califano v. Yamasaki*, the Supreme Court held that a class action brought in federal district court need not necessarily be geographically limited. 442 U.S. 682, 702 (1979). The central concern in such a case is that the relief granted is not "more burdensome than necessary." *Id*. This principle stems from the basic notion that relief should be narrowly tailored to address the specific harm shown. "On the other hand, [relief] is not necessarily made over-broad by extending benefit or protection to persons other than prevailing parties in the lawsuit—even if it is not a class action—*if such breadth is necessary to give prevailing parties the relief to which they are entitled*. *Bresgal v. Brock*, 843 F.2d 1163, 1170–71 (9th Cir. 1987). Where nationwide relief is not fashioned, the courts are left to address the agency circuit by circuit, until the issue reaches the Supreme Court. *See Hi-Craft Clothing Co. v. NLRB*, 660 F.2d 910, 912 n.1 (3d Cir. 1981) (suggesting "that in most situations, a far better approach for an administrative agency would be to accept the first ruling of a court of appeals on a particular point or else seek reversal in the Supreme Court or a statutory change by Congress. To shop in a number of courts of appeals in hopes of securing favorable decisions is not only wasteful of overtaxed appellate resources but dissipates agency energies as well. This shopping practice should be subjected to searching and critical review.").

The Court is sensitive to the Forest Service's interest in fully developing the legal issues implicated by the notice, comment, and appeal regulations. The issues are both factually and legally complex. However, in order to adequately redress the harm suffered by Plaintiffs, the invalidation of the Forest Service regulations as outlined in the July Order must reach beyond the borders of the Eastern District of California. Although this action originally challenged the Burnt Ridge Project in California, the case evolved from challenging a specific project in a specific forest to challenging regulations, applicable nationwide, promulgated by the Forest Service. As the Court explained in the July Order, Plaintiffs "suffered actual injury due to the Forest Service's regulations

ORDER

implementing the ARA." Docket No. 77 at 4–5. The appropriate remedy, therefore, is to prevent such injury from occurring again by the operation of the invalidated regulations, be it in the Eastern District of California, another district within the Ninth Circuit, or anywhere else in the nation. Inasmuch as Defendants' motion to clarify or amend seeks to geographically confine the July Order, the motion will be denied.

### B. Temporal Scope

Defendants' argue that the July Order should only apply to projects beginning after the issuance of the July Order. Retrospective application, they assert, is inappropriate because the Forest Service reasonably relied on the invalidated regulations and because reexamining projects begun under the now invalidated regulations that are not closed would be overly burdensome. Plaintiffs respond that judicial orders normally apply retrospectively and that the Court did not indicate an intent to stray from this precept. They further argue that the Forest Service has not demonstrated compelling circumstances justifying non-retroactive application.

Because it is instructive, the law of retroactivity is discussed below. In the interest of clarity, however, it is important to note as an initial matter that what is at issue here is the temporal scope of the July Order. Retroactivity as the term is generally used has dual functions of remedy and choice of law. When an appellate court issues a decision, the decision generally governs pending actions. This Court, of course, is not an appellate court, and its decisions are not accorded retroactive application in the sense of choice of law. The Court may, however, fashion a remedy that applies retroactively to the parties before it. The question before the Court is whether such a remedy is appropriate in this case.

The law governing when a judicial decision applies only prospectively is not entirely clear. In *Chevron Oil Co. v. Huson* the Supreme Court announced a three-part framework for determining when exclusively prospective application is appropriate, and while the case has not been explicitly overruled, the framework has been called into question. *Compare* 404 U.S. 97, 106–107 (1971) (establishing three-part framework), *with Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97–98 (1993). S*ee also Miller v. County of Santa Cruz*, 39 F.3d 1030, 1035 (9th Cir. 1994) (noting that the *Harper* decision abandoned the *Chevron Oil* approach to determining prospective application in

ORDER

civil cases).  The *Chevron Oil* framework is as follows:  First, a decision applied non-retroactively should establish a new principle of law, either by overruling past precedent or by deciding an issue of first impression, the resolution of which was not clearly foreshadowed.  Second, courts consider the purpose and effect of the rule and whether retroactive application would advance or retard the decision to be applied.  Finally, courts weigh any inequitable results that might follow from retroactive application of the decision.  *Chevron Oil Co.*, 404 U.S. at 106–107.  The Court significantly reworked the final prong of the *Chevron Oil* analysis in *Harper,* stating that it is impermissible in both civil and criminal cases for "'the substantive law [to] shift and spring' according to 'the particular equities of [individual parties'] claims' of actual reliance on an old rule and of harm from a retroactive application of the new rule."  *Harper*, 509 U.S. at 97 (citing *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 543 (1991) (opinion of Souter, J.)) (holding, "[w]hen this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule").  Later, in *Reynoldsville Casket Co. v. Hyde*, the Supreme Court clarified that after *Harper*, *Chevron Oil* does not permit non-retroactive application based upon a party's reliance interests.  514 U.S. 749, 752–54 (1995).  However, in *Ryder v. United States*, the Court noted "whatever the continuing validity of *Chevron Oil* after *Harper* and *Hyde*, there is not the sort of grave disruption or inequity involved in awarding retrospective relief to this petitioner."  515 U.S. 177, 184–85 (1995) (noting that only seven to ten cases were open on direct review that would be affected by retroactive application of the ruling).  Presumably, therefore, while subsequent cases have chipped away at the final prong of *Chevron Oil*—weighing inequitable results flowing from retroactive application—some weighing of inequities remains a part of the analysis.

     Here there is no doubt that the Forest Service relied on the regulations invalidated by the July Order.  After *Harper* and *Hyde* such reliance is simply insufficient to preclude the retroactive application of judicial decisions.  What is not insufficient, however, is the "grave disruption or inequity" that would follow from retroactive application of the July Order as part of the remedy designed by the Court.  The invalidated regulations were promulgated over two years ago.  In

ORDER

January of 2005, the Forest Service created a national database to track projects that are likely to be documented in a decision memo, decision notice, or record of decision.  Docket No. 79 (Decl. of Manning) at ¶ 3.  According to the database, between January 1, 2005, and June 30, 2005, 1,090 decision memos authorizing categorically excluded projects were signed.  *Id*. at ¶ 4.  The database does not track how many of these authorizations are still pending.  *Id*.  From January 1, 2005, to July 1, 2005, the database shows that 3,377 proposed decisions were expected to be documented in decision memos and categorically excluded from documentation in an environmental impact statement or environmental assessment.  *Id*. at ¶ 6.  Simply culling from the tremendous volume of decisions made under the invalidated regulations those that are not final from those that are final would be a daunting task.  Furthermore, because the July Order invalidated and severed regulations governing procedure, retrospective application would require not only that the old regulations not be employed, but also that regulations governing procedure for public involvement be enacted in the old regulations' stead before moving forward with pending projects.  In short, a retroactive remedy would seem to plunge the Forest Service headlong into a crippling morass of confusion.  The July Order, therefore, will apply to Forest Service projects and decisions post-dating the July 7, 2005, docketing of the July Order.

## II.     Plaintiffs' Motion for Contempt

Plaintiffs' argue that the Forest Service should be held in contempt for violating the July Order.  They aver that the Forest Service directly violated the July Order by continuing to apply regulations set aside by the July Order.  Further, they assert that even if Defendants' motion to amend and clarify is well founded, the Forest Service should still be held in contempt for applying invalidated regulations during the pendency of the motion.

On balance, it seems that contempt is not warranted at this time.  To be clear, the Court fully intends to enforce its orders.  Given the complexity of the issues involved in the July Order, as well as the issues that remained after the issuance of the July Order, however, it seems inappropriate to hold the Forest Service in contempt at this time.

ORDER

**IT IS THEREFORE ORDERED:**

Defendants' motion to clarify and amend judgment at **Docket No. 79** is **GRANTED IN PART and DENIED IN PART**. The conclusions of the July Order will not be confined to the Eastern District of California or the Ninth Circuit. The July Order will be applied prospectively, as of July 7, 2005. Plaintiffs' motion for contempt at **Docket No. 81** is **DENIED**.

Dated at Anchorage, Alaska, this  16  day of September 2005.

                                                                                /s/ James K. Singleton  
                                                                               **JAMES K. SINGLETON, JR.**  
                                                                                  United States District Judge