COUNTY OF MADISON    )
                     )   SS.
STATE OF ILLINOIS    )

## DECLARATION OF JIM BENSMAN

Under the penalty of perjury under the laws of the United States, I declare that I am at least 18 years of age and the following statements are true and correct to the best of my knowledge:

1. My name is Jim Bensman. I currently reside at 1802 Main Street, Alton, IL 62002.

2. I am a member of Heartwood and I am employed as Heartwood's Forest Watch Coordinator.

3. This is the second lawsuit over the appeal regulations that Heartwood has been involved with. We have filed these lawsuits because we want to be able to comment and appeal projects such as timber sales, ORV trails, prescribed burns, wildlife openings, and these kinds of projects. I have read Gloria Manning's declaration on all the projects she contends are being impacted by the Order. We do not want and have never asked for most of the kinds of projects she is listing to be subject to comment and appeal. When we filed this suit, we wanted what was subject to appeal before the 2003 regulations to be reinstated. We wanted timber sales and the list of 10 kinds of projects from our 2000 settlement (65 FR 61302) to be subject to comment and appeal.

4. We have told our attorney to tell the Forest Service we are willing to discuss with them what should be subject to comment and appeal multiple times. If the Forest Service would talk to us, we would agree to what was in effect before the 2003 regulations or something similar.

5. When the Forest Service started what appears to me to be an attempt to create a train wreck by subjecting projects to comment and appeal that we have never sought to be subject to comment and appeal, reporters started calling me. I told the reporters we sued because we wanted projects like 250-acre clearcuts, Off Road Vehicle Trails, and prescribed burns to be subject to comment and appeal. I also pointed out that we have repeatedly told the Forest Service we were willing to negotiate on what should be subject to comment and appeal but the Forest Service will not talk to us. There has been extensive coverage

around the country (and some world coverage) of this. One AP article showed it appeared in about 60 papers around the world. Thus, it should be abundantly clear to the Forest Service that we do not want most of the projects they are stopping stopped. The Forest Service still will not talk to us and keeps telling the press they have to shut all this stuff down. When I see the Forest Service complaining in the press and Congress about all the stuff they have to shut down, our attorney has repeatedly telling the Forest Service we are willing to talk about it, we say this in the press, and the Forest Service will not talk to us, it looks to me they are intentionally trying to create a train wreck.

6.  As my first declaration points out, Heartwood and I are harmed by the Forest Service allowing projects like timber sales, ORVs projects, burning, and so-called "Wildlife Opening" projects going forward.

7.  In their brief the Forest Service states plaintiffs "have not made an allegation that they are harmed by any currently proposed project." Def Brief at 12. That is because none of the currently proposed projects were pending when I filed my first declaration in July 2004. There are now projects pending that will harm Heartwood and I if we do not get to comment and appeal on them.

8.  The first example is the Shirley Creek Salvage timber sale on the Hoosier National Forest. On September 12, 2005, the Forest Service approved this project with a CE and said it was not subject to appeal (in violation of the July 2005, order). On October 7, 2005, they began a 30-day comment period for the project. I have been to this project area multiple times (the most recent was last fall). I regularly visit the Hoosier National Forest (I was there last weekend) and I hope to get to the project area this fall. Heartwood has members who have visited the project area and (like me) want to continue to use it in its natural state. I have been to many timber sales on the Hoosier, including salvage sales. I have often been distressed whenever I see all the damage to the area from various Forest Service projects. Besides the

concerns about my and Heartwood members' recreational use of the project area, we are also concerned about the impact from this project to Indiana bats. The project is near an Indiana bat (endangered species) hibernation cave. We do not believe the project adequately protects the Indiana bat as it allows destruction of trees they roost in. They can be removed when the Indiana bats are not there. We are also concerned about this project as we do not think it is legal to use a Categorical Exclusion for this project because the potential impact to the Indiana bat; and we think this should be combined with the other salvage sales in the area in an EIS. If the Forest Service stay is granted, we will lose our ability to appeal the project to ask the Regional Forester to require adequate protection for the Indiana bat and an EIS. We are also concerned that the Forest Service did not withdraw the Decision which was made in violation of their Court's order, but rather "suspended" the decision. So if the stay is granted, the Forest Service would unsuspend the project which would prevent us from being able to appeal and ask the Forest Service to require protection for the Indiana bat and an EIS. Additionally, cutting the trees would irreparably harm us as the trees cannot be put back on the stump

      9.      Another example is the Cold Hill Silvicultural Assessment on the Daniel Boone National Forest. On September 13, 2005, the Forest Service sent out a letter asking for scoping comments. The letter indicated (contrary to this Court's July order) that the project would not be subject to comment and appeal. After this Court's September Order, the Forest Service has now indicated the project will be subject to comment and appeal. This project includes 610 acres of logging and they plan to use a CE. The Forest Service is proposing to do this timber sale to determine the impacts of the types of projects allowed under the new Forest Plan. The Forest Service has indicated they plan to use the results for analyzing future timber sales. Thus, not only will this sale impact our members use of the areas to be logged, it will also have an impact on future timber sales in areas our members use. I have also seen many areas the Forest Service has

logged on the Daniel Boone National Forest and it disturbs me. I like natural appearing forests. Due to the size of the project and it potential for a precedent for future timber sales, we do not think a CE should be used. We believe there should be an EIS. If the stay is not granted, we will not be able to use the appeals process to protect our recreational use of the Daniel Boone and the habitat of the Indiana bat.

      10.      The next example is the New Pheasant Thinning project on the Monongahela National Forest. It includes 672 acres of logging. On July 25, 2005, the Forest Service approved this timber sale and claimed it was not subject to appeal. On July 29, 2005, we filed an appeal in accordance with this Court's July Order. I have attached the appeal. The Forest Service has ignored the appeal (other than their email system automatically acknowledging receipt of the appeal). While the regulations (36 CFR § 215.17(a)) require the Forest Service to offer to meet with the appellants to try to resolve the appeal "as soon as practicable after the Appeal Deciding Officer receives the appeal and the Responsible Official is notified," the Forest Service has not contacted us. Not only does our appeal raise procedural concerns with the project (i.e., they did not subject it to a 30-day comment period), we raise serious substantive concerns with the project. For example, the decision indicated the scoping notice had an error in it as it did not indicate this project was right by an Indiana bat hibernation cave. The Forest Service indicated they did not inform the public of the error because no one raised concerns about the Indiana bat. Our appeal points out that now that we know the project is near the cave, we do not think the project adequately protects the Indiana bat. Our appeal provided proof what the Forest Service said about the impacts to the Indiana bat were not true (i.e., we attached a Forest Service photo of Indiana bats using the size of trees the decision claimed Indiana bats do not use). Our appeal also argues due to the presence of the Indiana bat, it is illegal to use a CE for the project. If this Court grants the stay, the Forest Service will implement the project without ruling on our appeal.

11. There will certainly be other projects proposed in the near future, which if allowed to go forward without the opportunity for me to comment and appeal as a result of a stay, that will cause me irreparable harm because the projects will be completed without my ability to show why they should be altered or withdrawn.

Respectfully submitted,

_____
Jim Bensman
DATED: October 12, 2005
Alton, IL

**BEFORE THE REGIONAL FORESTER**
**EASTERN REGION**

| | |
|---|---|
| In Re: ) | |
| Appeal of Decision Memo ) | |
| New Pheasant Thinning Project ) | |
| Monongahela National Forest ) | |
| ) | |
| Heartwood, ) | |
| Jim Bensman, ) | |
|     Appellants. ) | |
| ) | Appeal _____ |

**NOTICE OF APPEAL**

    Pursuant to 36 CFR § 215 and 16 USC 1612[NOTE], Heartwood and Jim Bensman appeal the contemptuous July 25, 2005, Decision by Forest Supervisor Clyde Thompson to defy a Federal Judge and approve the New Pheasant Thinning Project.

**The relief sought:**

The decision to approve the projects be reversed and remanded.

Send correspondence to:

Heartwood
Jim Bensman
1802 Main
Alton, IL 62002
(618)259-3642
jim@heartwood.org

Respectfully submitted,

By:


_____
Jim Bensman                                                             DATED: July 29, 2005

**BEFORE THE REGIONAL FORESTER**
**EASTERN REGION**

| | |
|---|---|
| In Re: ) | |
| Appeal of Decision Memo ) | |
| New Pheasant Thinning Project ) | |
| Monongahela National Forest ) | |
| ) | |
| Heartwood, ) | |
| Jim Bensman, ) | |
|     Appellants. ) | |
| ) | Appeal _____ |

**STATEMENT OF REASONS**

    This decision constitutes blatant defiance of a Federal Judge, the laws of our land, and an assault on democracy. Defying our laws and a judge like this is one of the most despicable things the Forest Service has ever done. This shows what outlaws the Forest Service really is. Congress passed a law saying the Forest Service has to subject projects like this to comment and appeals and a judge issued an order prohibiting what was done. This is not a case of not knowing a judge has issued an order prohibiting what was just done, this is a case of the Forest Service knowingly and intentionally defying a Federal judge. When we fist got notice of this, we wrote the Forest Service:

> What is going on here? This is blatant contempt of court. We won our lawsuit on July 2, 2005, and Judge Singleton ruled the Forest Service must provide a comment and appeals process for CEs (nationwide). (Order enclosed) Are you intentionally defying Judge Singleton's order? Or is this a case of no one has told you Judge Singleton threw out the part of the appeal regulations that exempted CEs from comment and appeal? If this is the case, I trust you will immediately withdraw this illegal decision. We have already sent DOJ a letter threatening to file a motion to hold the Forest Service in contempt if all projects previously approved with the illegal regulations are not immediately stopped. So it is quite surprising to get a decision that issues a CE not subject to appeal when Judge Singleton issued an order saying you cannot do this. Please let me know what is going on ASAP.

The Forest Service demonstrated this is knowingly and intentionally defying a Federal judge by stating:

> As Forest Service employees, we are not at liberty to discuss on-going litigation. Because the matter is in litigation, your concerns should be submitted through counsel until the matter is resolved.

    We are supposed to be living in a democracy with three separate but equal branches of government. The Forest Service is acting like we live in a dictatorship. Congress passed a law requiring projects like this to be subject to comment and appeal. The Forest Service is defying the law. A Judge ordered the Forest Service to comply with the law and the Forest Service is defying the judge. This is not democracy, this is a dictatorship.

*This Project is Subject to Appeal*

    As the Forest Service is clearly aware on July 7, 2005, we won most of our lawsuit against the new Appeal Regulations. The Court vacated the provisions of the regulations that allow the Forest Service to exclude Categorically Excluded projects from appeal:

- 2 -

> The following regulations are invalid as stated in this Order and will be severed from the Forest Service regulations: 36 C.F.R. § 215 .4(a) (excluding from notice and comment procedures projects and activities that are categorically excluded from documentation in an EIS or EA); 36 C.F.R. § 215.12(f) (excluding from appeal procedures decisions that have been excluded from documentation in an EIS or EA); 36 C.F.R. § 215.20(b) (exempting from notice, comment, and appeal procedures decisions signed directly by the Secretary); 36 C.F.R. § 215.10(a) (permitting delegation of the determination that an emergency situation exists); and 36 C.F.R. § 215.18(b)(1) (providing that an appeal decision will be sent to appellants five days after the decision is rendered).
> *Earth Island Institute v. Pengilly*,  --- F.Supp.2d —; 2005 WL 1645799, \*14 (E.D. Cal).

Therefore, the regulations that allowed the Forest Service to exempt this project from appeal do not exist. The regulations the Supervisor cited to claim this is not subject to appeal do not exist. This is blatant defiance of a Federal Judge and the laws of our land.

We note the Forest Service is claiming this only applies to the Eastern District of California. This, however, is frivolous and blatant contempt of court. We have asked the judge to hold the Forest Service in contempt for defying this clear order. There is nothing in this order that could possibly be construed as limiting it to the Eastern District of California. We also note that the Forest Service has filed a Rule 60(b) motion to try to get the judge to change the ruling. Rule 60(b), however, states, "A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation." Therefore, this project is subject to the appeals regulations without the illegal provisions.

Additionally, the judge ruled:

> Under the *Chevron* analysis, the question presented is whether the Forest Service's construction of the ARA to permit the categorical exclusion of certain projects is a permissible reading of the statute. *See Chevron,* 467 U.S. at 843. The ARA certainly permits exclusion of environmentally insignificant projects from the appeals process. For example, actions such as maintaining Forest Service buildings or mowing ranger station lawns need not be subject to the notice, comment, and appeal procedures. 57 Fed.Reg. at 43208. Actions that concern "land and resource management plans," however, "shall" be subject to notice, comment and appeal procedures. ARA § (a). To read this plain language as allowing exclusion of timber harvests is to "read[ ] into the statute a drastic limitation that nowhere appears in the words Congress chose ...." *See Hercules, Inc. v. EPA,* 938 F.2d 276, 280 (D.C.Cir.1991) (addressing the EPA's implementation of notice and covenant requirements imposed by CERCLA). By the Forest Service's own definition, "land and resource management plan[s]" are expected to contain "[b]road, programmatic direction for a forest, grassland, or prairie[ ]" including "identification of lands at the broad-scale ... suitable for timber harvest." 67 Fed.Reg. 72,770, 72,773 (Dec. 6, 2002). Furthermore, the ARA was drafted in direct response to the Forest Service's 1992 proposal to eliminate such appeals. While the Forest Service is clearly not required to make every minor project it undertakes subject to the appeals process, it is required to delineate between major and minor projects in a way that gives permissible effect to the language of the ARA. The Forest Service rules codified at 36 C.F.R. §§ 215.4(a) and 215.12(f) are "manifestly contrary" to the ARA. *See Chevron,* 467 U.S. at 843.
> *Earth Island Institute v. Pengilly*,  --- F.Supp.2d —; 2005 WL 1645799, \*7 (E.D. Cal).

This is logging and it clearly is subject to appeal under the ARA. Illegal regulations cannot eliminate requirements of Federal law. This project is subject to appeal under the ARA.

The Appeal Regulations do not clearly cover situations like this when the Forest Service has failed to provide the legally required 30-day comment period.

The Appeal Regulations provide:

(a) Individuals and organizations who submit substantive written or oral comments during the 30-day comment period for an environmental assessment, or 45-day comment period for a draft environmental impact statement (Sec. 215.6, 40 CFR 1506.10; FSH 1909.15, Chapter 20), except as provided for in paragraph (c) of this section, may file an appeal.
36 CFR 215.13.

This is not applicable to this situation as the Forest Service did not provide the required 30-day comment period. The regulations do not address situations like this.  No where do the regulations say appeals cannot be filed if the 30-day comment period is not provided.  The regulations list parties who cannot appeal and it does not say parties like the Appellants (who were not able to comment in a 30-day comment period since one was not provided) cannot appeal.  Thus, this regulation is silent on the issue at hand.

The Appeal Regulations also provide reasons why an appeal can be dismissed:

(a) The Appeal Deciding Officer shall dismiss an appeal without review when one or more of the following applies:

(1) The postmark on an appeal mailed or otherwise filed (for example, express mail service) or the evidence of the date sent on an e-mailed or faxed appeal is not within the 45-day appeal-filing period (Sec. 215.15).

(2) The time and date imprint at the correct Appeal Deciding Officer's office on a hand-delivered appeal is not within the 45-day appeal-filing period (Sec. 215.15).

(3) The requested relief or change cannot be granted under law or regulation.

(4) The appellant has appealed the same decision under part 251 (Sec. 215.11(d)).

(5) The decision is not subject to appeal (Sec. 215.12).

(6) The individual or organization did not submit substantive comments during the comment period (Sec. 215.6).

(7) The Responsible Official withdraws the decision.

(8) The appeal does not provide sufficient information in response to Sec. 215.14(b)(6) through (b)(9) for the Appeal Deciding Officer to render a decision.

(9) The appellant withdraws the appeal.
36 CFR § 215.16.

None of these are applicable. The only one that could possibly apply is (6). Since the Forest Service did not provide a 30-day comment period, it is not applicable. In order for us to not provide comments during the 30-day comment period, there would first have to be a 30-day comment period.

There is nothing in the regulations that state we cannot appeal when no 30-day comment period is provided and there is nothing in the regulations that allow the Forest Service to dismiss an appeal without review when there has not been a 30-day comment period. Furthermore, interpreting the Appeal Regulations to allow the Forest Service to avoid appeals by not providing a 30-day comment period would violate the ARA. By law, the Forest Service is required to provide a comments and appeals process. If the regulations make it impossible to appeal certain projects, the regulations would violate the ARA.

*The Appeal is Timely*

The Appeal Regulations state:

> (a) Time to file an appeal. Written appeals, including any attachments, must be filed with the Appeal Deciding Officer within 45 days following the publication date of the legal notice of the decision in the newspaper of record (Sec. 215.7).
> 36 CFR § 215.15.

The Forest Service has not issued the notice required by Section 215.7 for the project. So the appeal is timely. While the Forest Service may have issued a notice of the decision, it does not meet the requirements of Section 215.7. For example, the notice is required to state the project is subject to appeal. Therefore, the Forest Service has not issued a notice to start the clock. Therefore the appeals are timely as the 45-day period has not expired.

*The Forest Service must Stay this Project*

The ARA states:

> Unless the Chief of the Forest Service determines that an emergency situation exists with respect to a decision of the Forest Service, implementation of the decision shall be stayed during the period beginning on the date of the decision
> (1) for 45 days, if an appeal is not filed, or
> (2) for an additional 15 days after the date of the disposition of an appeal under this section, if the agency action is deemed final under subsection (d)(4).
> 16 USC 1612$^{NOTE}$(c)

An appeal is now filed. Therefore, this project must be stayed until 15 days after the disposition of the appeal.

The Appeal Regulations state:

> (a) When no appeal is filed within the 45-day time period, implementation of the decision may begin on, but not before, the 5th business day following the close of the appeal-filing period (Sec. 215.15).
>
> (b) Except for emergency situations (Sec. 215.10(c)), when an appeal is filed, implementation may occur on, but not before, the 15th business day following the date of appeal disposition (Sec. 215.2). In the event of multiple appeals of the same decision, the implementation date is controlled by the date of the last appeal disposition.
> 36 CFR § 215.9.

- 5 -

Therefore, this project cannot be implemented until 15 days after the appeal is disposed of.

*The Forest Service has not Subject this Project to a 30-day Comment Period*

While this project was sent out for scoping, this cannot be counted as the 30-day comment period required by the ARA and the Appeal Regulations. There are requirements that must be met in order for there to be a legally adequate comment period. For example, the Forest Service is required to send a notice that contains, "A statement that only those who submit timely and substantive comments will be accepted as appellants." 36 CFR § 215.5(b)(1)(vi). The Forest Service did not meet this requirement.

Another problem is while the purpose of the 30-day comment period is to raise substantive concerns with the project, that is not the purpose of the scoping period:

> Scoping is an integral part of environmental analysis. Scoping includes refining the proposed action, determining the responsible official and lead and cooperating agencies, identifying preliminary issues, and identifying interested and affected persons. The results of scoping are used to identify public involvement methods, refine issues, select an interdisciplinary team, establish analysis criteria, and explore possible alternatives and their probable environmental effects.
> 1909.15 FSH § 11.

Thus, the public has not been provided the required opportunity to provide substantive comments and concerns for the Forest Service to consider before making a decision.

This is particularly true since the Forest Service's scoping letter failed to disclose that this project is right by an Indiana bat hibernacula.

Therefore, this project needs to be reversed for the required 30-day comment period to allow members of the public to make substantive comments and establish standing to appeal the project.

*The Forest Service has not given Proper Notice of this Decision*

As explained above, the Forest Service has not issued the notice required by Section 215.7 for this project. Therefore, this project must be reversed for not complying with this requirement.

*Substantive Concerns with Project*

While this decision is fatally flawed on procedural grounds since the required 30-day comment period to raise substantive concerns and establish standing was not provided, we still want to raise a few substantive issues to demonstrate there are substantive problems with this decision.

*The DM does not make any sense*

We wrote the Forest Service:


The DM also states, "It was determined that nine of the stands where in the Indiana bat hibernacula." Trees do not grow in caves. They need light. So how can you be thinning trees in a cave? This makes no sense whatsoever. Please explain.

- 6 -

The Forest Service responded:

> I can, however, clarify your questions about Indiana bat hibernacula. When the BA/BE refers to bat hibernacula, it references Management Prescription 6.3. This management prescription includes all areas within 5 miles of known hibernacula. We often refer to them as "Indiana bat circles". This is the habitat that the Decision Memo and BA/BE are discussing when they state that some stands are within the Indiana bat hibernacula. As you point out, this is not technically correct and I will make an effort to make sure we avoid this in the future.

This needs to be corrected this time as the Forest Service is required to set forth a reasoned explanation for its decision.

*The Forest Service failed to Disclose the Project is near an Indiana Bat Hibernacula*

The DM states:

> This project was scoped through the interdisciplinary team process. On February 2, 2004 the scoping began, consisting of identification of internal issues and publication of a request for comment in the Parsons Advocate. This initial notice was used to identify interested publics in addition to those already known and on an established mailing list. A letter with attached maps was also mailed to all individuals identified as having potential interest in the project. <u>The public scoping notice indicated that these all areas were part of the management prescription 3.0: this was an error. Nine stands laid with in the management prescription 6.3, fall in the Indiana bat hibernacula. Since no public comments were received concerning the Indiana bat, the decision was made not to send out a corrected scoping letter.</u> A list of the agencies, groups, and individuals contacted is attached to this decision, and is on file in the project record at the Cheat/Potomac Ranger District office in Petersburg, West Virginia.
> DM at 3. (Emphasis added.)

What does the Forest Service expect? When the Forest Service fails to disclose part of the project is by an Indiana bat hibernacula, it is no surprise concerns about the Indiana bat were not raised. If the Forest Service would have indicated the project is by an Indiana bat hibernaculum, we certainly would have commented and raised concerns about the Indiana bat.

The CEQ Regulations provide:

> NEPA procedures must insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken. The information must be of high quality. Accurate scientific analysis, expert agency comments, and public scrutiny are essential to implementing NEPA.
> 40 CFR § 1500.1(b).

The information about the Indiana bats was not provided before the decision was made. The information the Forest Service provided the public was neither accurate or high quality. Therefore, the Forest Service has violated the CEQ Regulations.

- 7 -

*Failure to Adequately Address and Protect the Indiana Bat*

The BE fails to discuss the proximity of the project to a Indiana bat hibernacula. There is no discussion of what kind of use the areas to be cut could get due to the proximity of the cave. Many males stay around the cave year round. Areas around the caves are also used before and after hibernation. For example, there is swarming around the cave in the fall. The BE, however, fails to mention these facts or address these issues.

The BE claims:

The proposed areas for thinning currently provide limited habitat for the Indiana bat because these stands are 10-25 years of age consisting of immature trees. By thinning these stands, the Forest intends to promote mast producing species in a shorter time frame, thereby improving summer roosting and foraging for the bat over time by promoting tree maturity. Mature trees are more apt to provide exfoliating bark used by the bat for roosting. To prevent incidental take, the forest will only cut tree species that are less than 5 inches diameter at breast height (dbh) throughout the year. Should the forest determine that some trees over 5 inches dbh need to be thinned, those trees would be cut during the hibernation period of November 15 through March 30. The trees that remain from past harvests and girdled will improve roosting habitat for the bat as the bark starts sloughing from the tree. Based on the above avoidance measures, it is my determination that the proposed project will have "**no effect**" to Indiana bat.

This is fatally flawed as John McGregor has found male Indiana bats roosting in trees by hibernaculum that are less than 5 inches dbh on the Daniel Boone National Forest. See the picture on the end of the appeal. Therefore, this measure does not avoid the possibility of take. It certainly does not explain how a no effect finding can be made when the Forest Service has found Indiana bats roosting in trees less than 5 inches dbh by hibernacula.

This is certainly not taking a "hard look" at the impacts to the Indiana bat and this does not comply with the ESA. The Decision needs to be reversed to address these issues.

While the Forest Service certainly should know what their monitoring of Indiana bats have revealed, if the Forest Service would have disclosed that the project was by an Indiana bat hibernacula, we would have commented and raised these issues. The Forest Service cannot avoid its legal responsibilities by not disclosing the area is by an Indiana bat hibernacula in scoping and not providing the legally required 30-day comment period.

*At Least an EA is Required*

The DM states:

2.      There are no extraordinary circumstances as defined in FSH 1909.15, Paragraph 30.3.2, which might cause the action to have significant effects on flora, fauna, or the quality of the human environment.  Specifically:

    a.      The District Biologist evaluated the sites for potentially occurring proposed, endangered, threatened, and sensitive (PETS) species. Their habitat and potential for presence was also reviewed from district and forest occurrence records. It was determined that nine of the stands where in the Indiana bat hibernacula. The

- 8 -

>   biological evaluation concluded that with proper mitigations this project would not likely adversely affect any PETS species or their critical habitat.

DM at 3.

As explained above, the BE does not accurately or adequately address the Indiana bat. Likewise, as explained above, this is by a hibernacula and Indiana bats have been found roosting in the kinds of trees the project proposes to cut. (See picture at the end of the appeal.) Therefore, impacts to the Indiana bat are possible. Therefore, extraordinary circumstances are present and at least an EA is required.



A male Indiana bat was found roosting in the small tree in the center that has the blue stripe.  This is a Forest Service photo on the Daniel Boone National Fores.